VALLEY INTERNATIONAL PROPERTIES, INC., et al., Appellants,

v.

C. Fount RAY, Appellee.

No. 1406.

Court of Civil Appeals of Texas, Corpus Christi.

June 13, 1979.

Rehearing Denied Sept. 14, 1979.

Joel W. Ellis, Carter & Ellis, Harlingen, for appellants.

Joel W. Cook, Schlanger, Cook, Cohn & Mills, Houston, for appellee.

## OPINION

YOUNG, Justice.

This is an appeal from the granting of a motion for summary judgment. Appellants, Bill Bass and Valley International Properties, Inc., sued Brownsville Savings & Loan Association, Los Campeones, Inc., and appellee herein, C. Fount Ray, seeking: 1) to have a trustee's sale declared void and to have certain deeds issued at the sale cancelled; and 2) to recover damages for breach of fiduciary duty in the conduct of the trustee's sale. The suit against Ray was severed from the suit against Brownsville Savings and Los Campeones. See *Valley International Properties, Inc. v. Brownsville Savings & Loan Association*, 582 S.W.2d 222 (Tex.Civ.App.—Corpus Christi 1979). After severance, Ray, trustee at the disputed sale and a director of Brownsville Savings, filed a motion for summary judgment alleging that there were no issues of material fact because: 1) after considering the affidavits appended to defendant's motion for summary judgment, none of the allegations in the plaintiffs' petition justified a claim against the defendant; 2) the plaintiffs had never tendered to Los Campeones or Brownsville Savings the amount bid by Los Campeones after the foreclosure sale. The trial court granted Ray's motion for summary judgment, and the plaintiffs appeal. We affirm.

Much of the background of this suit is explained in our previous decision, *Valley International Properties, Inc. v. Los Campeones, Inc.*, 568 S.W.2d 680 (Tex.Civ.App. —Corpus Christi 1978, writ ref'd n. r. e.). Briefly, Brownsville Savings, mortgagee herein, loaned several million dollars, secured by deeds of trust to V.I.P., for the purchase of golf course facilities in Cameron County, Texas. Ray was named trustee in those deeds. V.I.P. defaulted on the obligation and the trustee's sale complained of below and here followed. At that sale, Pat Stanford, president and sole shareholder of Los Campeones, acquired substantially all of the property of V.I.P. by means of credit extended to Los Campeones by Brownsville Savings. The indebtedness of V.I.P. was then credited for the amount bid by Los Campeones.

After the sale, V.I.P. and Bass brought suit alleging that Ray, as trustee, had conspired to prevent a bidder from attending the trustee's sale which was held June 7, 1977, by conspiring with Bob Knowles, pres-

ident of Brownsville Savings, to tell a Mr. Floy Nelson that he could not bid for individual pieces of property at the sale but that he had to bid in one lump sum for all of the properties being offered. The action also alleged that Ray had conspired to exclude other bidders and had breached his fiduciary duty to V.I.P. by advertising that the sale would be for cash only and requiring bidders to pay cash for properties bid upon, while Brownsville Savings extended credit to Los Campeones which was thereby able to purchase and did purchase for credit all the properties sold at the trustee's sale. Appellants also alleged that Ray, as trustee at the sale, had violated his fiduciary duty to the appellants because he had helped Los Campeones prepare its bid sheet for the sale and because after the sale he received $10,000 from Los Campeones for services performed in connection with the sale and loan made by Brownsville Savings.

Attached to appellee's motion for summary judgment were the affidavits of appellee Ray, Bob Knowles and Pat Stanford. In short, Ray's affidavit stated that he knew of no actions taken to prevent purchasers from attending the sale; that, indeed, every effort was made to afford to all inquiring persons an opportunity to bid at such sale; that no persons protested the holding of the sale or the execution of deeds to the highest bidder for each parcel; and that he did not violate any of the express provisions of the deed of trust or any ethical standards. The affidavit of Bob Knowles (president of Brownsville Savings) states that he never told anyone, including Floy Nelson, that they could not bid on foreclosure or that they could not make bids for individual properties at the sale. He also stated that he never discouraged anyone from bidding at the sale. The affidavit of Pat Stanford (sole shareholder of Los Campeones) stated that he was present at the sale and there were no objections to the sale by anyone present. He further stated that he did discuss the amounts he would bid (in the absence of other bids) with Brownsville Savings, and that he did obtain a maximum loan amount that Brownsville Savings would extend to him on each property.

In response, appellants introduced only the affidavit of Bill Bass, former president of V.I.P. Briefly, Bass' affidavit stated that he knew that Los Campeones was an agent of Brownsville Savings, that he had heard at a previous trial that Brownsville Savings had issued a check for $10,000 to Ray in connection with Brownsville Savings' loan to Los Campeones; that, in his opinion, Ray was trying to represent conflicting interests; that Ray, Brownsville Savings and Los Campeones planned and conspired to loan Los Campeones all the money it needed to purchase the properties at the sale for credit; and that Ray helped Brownsville Savings and Los Campeones prepare a "bid sheet" for the sale.

■ Appellants' burden on appeal from the granting of a summary judgment is to point out particular fact issues and show that the summary judgment proof was insufficient to establish as a matter of law the absence of any of these issues. *Anderson v. Bormann*, 489 S.W.2d 945, 947–48 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.).

In this connection, appellants bring one point of error alleging that issues of material fact remain unresolved in this case. Under this general point of error, the arguments set forth four possible unresolved fact issues; namely, whether Bob Knowles in concert with Ray discouraged Floy Nelson from attending the sale; secondly, whether the appellee wrongfully required all bidders at the sale, other than Los Campeones, to pay cash; thirdly, whether Los Campeones wrongfully paid Ray a $10,000 fee for his services in connection with the sale and loan; and finally, whether Ray wrongfully assisted Los Campeones in preparing a bid sheet for the sale herein.

■ Appellants' first argument is without merit in that the affidavits supporting appellee's motion for summary judgment unequivocally deny discouraging Floy Nelson from attending the sale. At this juncture, it was the appellants' burden to present facts in an affidavit challenging this statement. *Carr v. Densford*, 477

S.W.2d 644, 647 (Tex.Civ.App.—Amarillo 1972, no writ); 4 McDonald, Texas Civil Practice § 17.26.8(iv) (1971). There is no mention made of any conversation with Floy Nelson in Bass' affidavit, the only affidavit which the appellants presented to the Court in opposition to the motion for summary judgment. Consequently, we must treat the facts stated in the affidavits supporting appellees' motion for summary judgment in connection with any conversation with Floy Nelson as true. Appellants' first assertion of a fact issue is overruled.

█ Secondly, viewing the allegations of Bass' affidavit as true, and all the other evidence in a light most favorable to the appellants, we find no evidence of any wrongful acts or fraud in connection with allowing Los Campeones to use credit extended by the mortgagee at the sale while all others were asked to pay cash. 4 McDonald, Texas Civil Practice § 17.26.12 (1971). Bass' affidavit states that Los Campeones was the agent of Brownsville Savings, that Ray was a director of Brownsville Savings, that Ray advertised the sale herein as a "cash sale" and sold the property to Los Campeones for "credit," and that Brownsville Savings extended the credit to Los Campeones so that it could purchase the property. Brownsville Savings then credited V.I.P.'s notes for the amount Los Campeones bid at the sale. In *Chase v. First National Bank*, 1 Tex.Civ.App. 595, 20 S.W. 1027 (1892, no writ), the mortgagee at a deed of trust sale used its agent to purchase the property being sold and loaned the agent most of the money to consummate said sale. Though the sale was advertised as a "cash sale," the fact that the mortgagee loaned its agent part of the purchase price and that the agent never gave cash money to the mortgagee for part of the purchase price was not sufficient to render the trustee's sale invalid. The court upheld the sale and stated:

".  .  . Our view is that where a trust deed authorizes a sale for cash, and the trustee, who is also the mortgagee or the agent of the mortgagee, purporting to sell for cash, gives credit, or has an understanding with the bidder that credit will be given him on part of his bid, in order to induce him to make the property bring the full amount of the bid secured, this is not to the injury of the mortgagor, or those claiming under him, and will not avoid the sale  .  .  ."

See also *French v. May*, 484 S.W.2d 420, 425 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.). In this regard, while the debt herein was slightly greater than 6 million dollars, the bid of Los Campeones amounted to about 5.7 million dollars. Thus, while Los Campeones did not bid the full amount of the debt secured, its bid was only somewhat less.

We follow the holding in the *Chase* case and find that no cause of action was alleged by merely asserting that the mortgagee, Brownsville Savings, agreed to lend Los Campeones all the funds necessary to purchase the property herein and that the trustee, Ray, did not require the payment of cash rather than credit. Compare *McClure v. Casa Claire Apartments, LTD*, 560 S.W.2d 457 (Tex.Civ.App.—Beaumont 1977, no writ); *Thomason v. Pacific Mut. Life Ins. Co.*, 74 S.W.2d 162 (Tex.Civ.App.—El Paso 1934, writ ref'd). It would have been an idle gesture for Brownsville Savings to have given Los Campeones the cash, in that Los Campeones would have given the cash to Ray who in turn would have given it back to Brownsville Savings. Appellant's second contention about raising a fact issue is overruled.

█ We also find no merit in the appellant's third and fourth contentions regarding the $10,000 payment to Ray and his participation in preparing the "bid sheet" for Los Campeones. The law is clear that a mortgagee with the power to sell may purchase at his own sale made at a public auction. *Southern Trust & Mortgagee Co. v. Daniel*, 143 Tex. 321, 184 S.W.2d 465, 467 (1944). Furthermore, the mortgagee itself is competent to act as the trustee to execute the power to sell when duly designated as such in the trustee's deed. *Hart v. McClusky*, 118 S.W.2d 1077 (Tex.Civ.App.—Amarillo 1938, writ ref'd); *Heiner v. Homeland Real-*

*ty Co.*, 100 S.W.2d 793 (Tex.Civ.App.—Waco 1936, no writ). Ray was designated as the trustee in the trustee's deed herein. In addition, the trustee under a deed of trust is not precluded from becoming a purchaser at the sale merely because he is the trustee and also an agent of the mortgagee. *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473, 476 (Tex.Sup.1965); *Fuqua v. Burrell*, 474 S.W.2d 333 (Tex.Civ. App.—Waco 1971, writ ref'd n. r. e.). In light of the above authorities, we find no wrong in the alleged activity even if true, wherein Los Campeones, agent for Brownsville Savings, paid Ray, a director of Brownsville Savings, $10,000 as its attorney for services provided in connection with the sale and loan. Furthermore in this regard, any of Ray's participation in helping Los Campeones prepare a bid sheet for the sale without more is not actionable. Compare *Tarrant Savings Association v. Lucky Homes, Inc.*, supra. Appellants' point of error is overruled. The judgment of the trial court is affirmed.